THOMAS G. HAZARD v. THE FRANKLIN MUTUAL FIRE INSURANCE COMPANY.

A fire policy taken out from a mutual company by a mortgagor of a house upon his interest in it, though assigned with the assent of the company to the mortgagee, is avoided by the assignment of the mortgagor of all his interest in it for the benefit of his creditors, though made without the assent or knowledge of the mortgagee; the charter providing, that "if the said property [insured] shall be sold or conveyed in whole or any part, then this insurance shall be void and of no effect."

Assessments made and collected upon the premium note of the insured, after the alienation of the premises insured, but in ignorance of such alienation, cannot operate as a waiver of the forfeiture of the policy under the above condition, or estop the company from setting up the alienation in defence to a suit for the loss; but the assessments may be recovered back by the insured under the money counts in his declaration, with interest from the time of payment, as money paid and received by mistake.

ASSUMPSIT to recover a loss on a fire policy, effected by the plaintiff with the defendants, a mutual insurance company, on his stone dwelling house in North Providence.

The case, after opening, was withdrawn by the parties from the jury, and submitted to the court, under the general issue. At the trial it appeared, that the plaintiff, on the 30th day of

August, 1856, being the owner in fee of the property insured, subject to a mortgage to the Providence Institution for Savings for $2000, took out the policy sued, insuring him against loss or damage by fire, in the sum of $2000, for the term of seven years, commencing at noon on the 30th day of August, 1856, and ending at noon on the 30th day of August, 1863,—the policy providing, that the amount insured should be payable, in case of loss, to the Providence Institution for Savings. On the 1st of July, 1857, the plaintiff paid and procured the discharge of the above mortgage, and on the same day mortgaged the premises anew to Joseph Nichols, for the sum of $2500, to whom, the Providence Institution for Savings, at the same time, and with the written assent of the plaintiff, assigned the policy of insurance, and the assignment was recorded by the insurance company. On the 9th day of February, 1860, the plaintiff assigned the insured premises, with other property, to Henry Whitman and another, for the benefit of his creditors, and, on the 2d day of July, 1860, the assignees, pursuant to a power of sale contained in the assignment, sold for value, and conveyed the insured premises to the wife of the plaintiff; who, on the 19th day of December, 1860, joined with her husband in a mortgage of the same to Anson W. Aldrich, to secure the payment of $1300. On the 11th day of June, 1861, all the plaintiff's interest in the insured premises was levied on by the sheriff under four several executions obtained against him, and on the 14th day of the following September, the sheriff made sale and conveyance of that interest. On the 31st day of July, 1860, and again, on the 12th day of January, 1861, the defendants assessed the premium note given by the plaintiff upon the issuing of this policy, which assessments were paid to them by the plaintiff,—the one, on the 1st day of September, 1860, and the other, on the 5th day of March, 1861. On the 20th day of August, 1861, the insured building, which was temporarily unoccupied, was damaged to the full amount insured, by the explosion of a keg of gunpowder placed in a closet in the lower part of the house by some evil disposed person, and fired by a train laid along the floor to the cellar kitchen door; but was burnt no farther, than as the floor was charred or blackened by the train; and on the 9th day of April, 1862, the shattered

building, which, in the meantime, had been boarded up, was set on fire, and all of it that was combustible was consumed, and the rest rendered worthless by fire,—the house, when entire, being valued at $3000.

No express notice of his alienation of the insured premises was given by the plaintiff to the defendants ; but it was proved that notice of the assignment, and of the intended sale of the insured premises under it, was published in newspapers taken by the defendants, at their office,—the first, in the Providence Daily Post, of the dates of April 10th, 11th and 12th, 1860, and the second, in the Providence Daily Journal, from June 23d to July 2d, inclusive, 1860. Some proof was submitted by the plaintiff, that shortly after the damage of the insured building by the explosion, and when claim was first made for the loss occasioned thereby, one of the objections taken by the president of the insurance company, whose duty it was to settle losses, was, that the plaintiff had alienated all his interest in the insured property prior to the loss ; but the secretary of the company, whose duty it was, when an assessment was ordered by the board, to select the policies liable to the same, and to calculate and collect it, swore, that he, and to his knowledge, the board or president, had no knowledge of the alienation by the plaintiff of his interest in the premises, either at the time when the assessments of July, 1860, and January, 1861, were made or collected ; that he first learned the fact of such alienation from the counsel for the defendants, long after the second loss, or when the building was set on fire,—some time in April, 1862,—and that, in consequence of such information, the plaintiff's policy was not included in the assessment made on the 26th day of that month.

One of the conditions of the policy was, that "if the said property [insured] shall be sold or conveyed, in whole or in part," "then this insurance shall be void and of no effect."

It appeared, that at the time of effecting the policy, a premium of eight dollars in cash was required and paid, and a premium note of $160 was given by the plaintiff to the defendants, upon which assessments were to be, from time to time, made, to cover the losses which might happen amongst the coinsurers. The fifth section of the charter of the company provided as follows :—

" SECTION 5. No member of said company shall be liable to any assessment beyond the amount of his premium note, nor to pay more than the sum of fifty cents for every hundred dollars insured to him by this company, for his proportion of any and of every loss which shall be occasioned by any single fire, over and above the deposit made at the time of effecting his insurance. And in case losses shall, at any time, require the aforesaid contribution of fifty cents upon an hundred dollars over and above the original deposit, any member upon paying the same and surrendering his policy, may and shall be discharged from said company ; Provided, always, that the said payment and surrender of the policy shall be made before any subsequent loss or expense is incurred by said company. And if it should ever happen that the stock or property of said company, together with such contributions as aforesaid, shall not be sufficient to pay all the losses occasioned by any fire, then and in such case, the sufferers insured by said company shall receive, towards making good their respective losses, a proportional dividend of said whole stock, or property and contributions, according to the sums by them respectively insured with said company."

*Currey*, for the plaintiff.
*Mathewson & Markland*, for the defendants.

AMES, C. J. The main question in this case is ruled by the decision in *Hoxsie* v. *The Providence Mutual Fire Insurance Co.* 6 R. I. Rep. 517. This policy was effected upon the plaintiff's interest in the insured premises ; the amount due upon it in case of loss to be paid to the Providence Institution for Savings, to whom he had mortgaged them. When this mortgage was discharged and a new one given to Nichols, nothing more can be fairly implied from the defendants' recording the assignment of the policy to the new mortgagee, than that they were willing that the insurance should continue for the benefit of the new mortgagee as it had done for the old one. There was no new contract of insurance. The parties to it, and the subject of it, were the same as before ; and the record was an acknowledgment by the defendants that they had notice of the mortgage to Nichols, and of the assignment of the policy for his security, and

assented to both. The engagement with Nichols went to this extent, and no farther; and if it is to be construed as a new insurance of *his* interest in the premises, it is difficult to see upon what principle the plaintiff can maintain this action. He was no party to, but merely an actor in, that contract, and has no interest in the loss. It remained, however, the plaintiff's insurance upon *his* interest, for which *his* note was to be assessed; and the loss when received by Nichols was, so far as it would go, to extinguish the mortgage debt. By a plain condition of the policy, it became void upon the plaintiff's conveyance of the insured premises; and whether Nichols assented to, or was ignorant of, the conveyance at the time it was made, he must abide by the conditions of the contract under which he claims. Although the decision in *Hoxsie* v. *The Providence Mutual Insurance Co.* could not, under the facts in that case, go to this extent, the grounds upon which the decision was put clearly did; and we adopt them in application to the case before us.

It is unnecessary to decide whether, if the defendants had assessed the policy of the plaintiff and collected the assessments with full knowledge that he had alienated the premises insured, such conduct would operate as a waiver of the forfeiture of the policy, or estop them from setting up the alienation in defence to a suit for the loss. The proof fails to bring home to them such knowledge. The registry of the deeds of conveyance operates as constructive notice of them only to those who claim title to the subject of conveyance; and the newspaper notices, the last of which was not of a sale, but of an intent to sell, are no further brought to their knowledge than that they were contained in newspapers taken at the office. Such proof of knowledge is quite too uncertain for the purpose here claimed; especially in the face of the testimony of the secretary of the company, whose duty it was, when assessments were ordered by the directors, to distribute them amongst the policies, and collect them of the policy-holders, that he did not know of the alienation, nor to his knowledge did any officer of the company, at the time the assessments in question were made upon the policy of the plaintiff and collected of him; and that as soon as it was made known to them, the policy of the plaintiff was no farther assessed.

We are of opinion, however, that the plaintiff is entitled to recover, under the money counts of his declaration, the amount of these assessments, with interest, as paid and received by mistake. The liability to assessment upon his premium note, for losses occurring during the continuance of his policy, is the consideration of the right of each member of this mutual insurance company to his own indemnity. This liability and right being correlative, it justly follows, that when without fraud on his part, and, as in this case, from the pressure of circumstances, a member is forced into an act which forfeits his policy, the company can assess his note for no longer a term than it indemnifies him under his policy. The fifth section of the charter of this company, in application to the case provided for by it, is conceived in this spirit, and the omission of the company to assess this policy after ascertaining that the plaintiff had forfeited it, affords us their view of their rights, and an example of their practice, under it.

Let judgment be entered for the plaintiff, for the amount of the two assessments, with interest on each from the time of payment.